## GINTER v. COMMONWEALTH.

Court of Appeals of Kentucky.

Nov. 6, 1953.

Michael A. Rowady, Winchester, for appellant.

J. D. Buckman, Jr., Atty. Gen., W. Owen Keller, Asst. Atty. Gen., for appellee.

STEWART, Justice.

John Ginter was convicted of carrying concealed a deadly weapon on or about his

person and sentenced to serve two years and a day in the penitentiary. See KRS 435.-230. He appeals, insisting the search disclosing the weapon was unauthorized and in violation of his constitutional rights, so that his conviction, he claims, was based upon evidence illegally obtained.

The evidence is undisputed that at approximately 6:00 p. m. on August 9, 1952, in response to a call, four officers of the Winchester police department went to a beer tavern and restaurant on North Main Street of that city, seeking Ginter. As they entered the building they saw him seated in a booth, conversing with Cora Freeman, the proprietress. The officers approached Ginter and apprised him they had come to arrest him. At this point Ginter arose, struck one of the officers first on the head and then on the chest with his fists. Two of the policemen stated Ginter moved his hand toward his right front pocket. He was then seized, overpowered and subjected to a search which revealed that he carried, hidden from sight, a .32 caliber pistol in his right pants pocket. He was taken into custody and escorted to jail where he remained overnight. On the following day, he appeared before the police judge who conducted an examining trial and held him over to the Clark County grand jury. There he was indicted during the September, 1952, term for the offense above mentioned. A trial followed later with the result previously described.

It was established by the testimony of each of the four officers that Ginter was drunk at the time he was arrested. He did not take the stand and deny this. Instead, Ginter contends he was not proven to be drunk, for the reason that he was not drinking and he was not conducting himself in a boisterous manner on the occasion of his arrest. He asserts this evidence was brought out on the cross-examination of these four men. Be that as it may, the proof is all one way that he was intoxicated at the time indicated. Next he asserts the alleged drunkenness did not occur in a public place within the meaning of KRS 244.020(2). We are of the opinion that a combined beer tavern and restaurant is a public place.

Although the officers had no warrant of arrest, they nevertheless did what was required of them by section 394 of the Criminal Code of Practice, which provides: "It shall be the duty of all peace officers to arrest any insane or drunken person whom they may find at large, and not in the care of some discreet person, and carry him before some magistrate of the county, city or town in which the arrest is made." It should be remembered they had gone to the establishment in answer to a complaint lodged against Ginter.

Not only was a misdemeanor committed by Ginter by his being drunk in the presence of the policemen, but he was undoubtedly guilty of breach of the peace when he made an unwarranted attack upon the officer. We conclude the arrest was lawfully made. As a consequence of a legal arrest, the search of Ginter was proper and anything found on or about him could be used as evidence for whatever charge might thereafter be brought against him. Turner v. Commonwealth, 191 Ky. 825, 231 S.W. 519; Ballou v. Commonwealth, 195 Ky. 722, 243 S.W. 922.

A final contention is that appellant's rights were abrogated in violation of sections 46 and 394 of the Criminal Code of Practice because he was not " * * * forthwith carried before the most convenient magistrate", in order that he might have given bail for his appearance in court. These statutes of general application are qualified when the person arrested, as here, is drunk or disorderly. This precise issue in connection with the same Code sections was raised and resolved in Bailey v. Shrader, 265 Ky. 663, 97 S.W.2d 575, 578, and there this Court said: "The law does not require a judicial officer to hold his court at all hours of the night and day; nor does it require that he shall do violence to his conscience by holding an examining court on the Sabbath—although the proceedings of an examining court held on that day may be valid. Nor does the law re-

180

quire or permit such an officer to try one who is temporarily incapacitated by drink to attend to or understand the charge preferred against him."

The conclusion we have reached, therefore, is there was no miscarriage of justice in this case.

Wherefore, the judgment is affirmed.